## WILLIAM DOLTON

### *v.*

## PUBLIC SERVICE ELECTRIC COMPANY.

[Submitted May 14th, 1914.   Decided July 8th, 1914.]

1. Where an electric company wrongfully erected massive poles in a street in order to carry a high-tension transmission system, the trespass was permanent, and constituted an injury to the reversion for which an action would lie.

. 2. *Query:* Has an electric light company the right to suspend wires for private lighting purposes in a highway over the highway land of an abutting owner, without the owner's consent?

---

*Mr. Richard S. Wilson,* for the complainant.

*Mr. Frank Bergen,* for the defendant.

BACKES, V. C.

As a part of its general plan of construction for the distribution of electricity for light, heat and power, the defendant erected two poles on the highway in front of the complainant's

lot in the township of Hamilton, county of Mercer, and strung upon them wires for public and private lighting, as well as the wires of a high-tension transmission system, of a voltage of thirteen thousand two hundred volts, all without the complainant's consent. After the filing of the bill, the defendant moved the poles to adjoining properties, from which the wires now suspend in front of the complainant's house.

The defendant is under contract with the township to light some of its highways with electricity, and for this purpose it undoubtedly has statutory power to erect poles and string wires; but, in massiveness, the poles put on the complainant's property were out of all proportion to the requirements for local lighting, and as to them this case is governed by *Thropp* v. *Public Service Electric Co., post p. 564.*

The right to maintain in front of the complainant's property the high-tension wires and wires for private lighting, raises another question which is suggested by the complainant, but is not argued or supported by authorities in his brief, and which is erroneously assumed by the defendant's counsel to have been settled in this state. In the five cases submitted in the brief of defendant's counsel, as "absolutely decisive upon this point," the question of the invasion of the property rights of abutting owners by the swinging of telegraph, telephone or electric lighting lines in front of their properties, was either not involved or the observations of the judges thereon were *obiter.*

The legislative grant to corporations like the defendant, of the right to use the highways of the state for the purpose of erecting poles to sustain the necessary wires, upon first obtaining the consent in writing of the owners of the soil (*P. L. 1896 p. 322*), was, in *Summit* v. *New York and New Jersey Tel. Co., 57 N. J. Eq. 123*, and in *East Orange* v. *Suburban Electric Light and Power Co., 59 N. J. Eq. 563*, held to be, so far as the complaining municipalities were concerned, a grant within the public easement, and regarding which they had no standing to complain. In the first-mentioned case, the wires were strung *across* streets, and in the second, they were hung along an avenue upon the poles and right of way of a telephone company. In neither case was private property involved, and in the latter case Vice-

Chancellor Pitney points out that the rights of the owners of the soil were not brought in question and could not be invoked by the municipality in support of its proposed action to tear down the wires, to restrain which the suit was brought. His views, that the permission given by the act of 1896 is quite sufficient of itself to authorize the mere act of suspending wires *across* the street, and that no action on the part of the municipal authorities was necessary to authorize it, were intended only to meet the claim of the municipality of the right to obstruct and interfere with the sovereign grant.

*Roake* v. *American Telephone and Telegraph Co., 41 N. J. Eq. 35,* and *Blanchard* v. *Eastern Pennsylvania Power Co., 80 N. J. Eq. 10,* were on motions for preliminary injunction to restrain the stretching of wires (one for telephone, the other for electric lighting) in front of the complainant's properties. The motions were denied because the complainant's rights which were sought to be protected were doubtful. It is true that in the former Chancellor Runyon remarked that "the legislature of this state appears to have considered that the use of the street, so far as the wires are concerned, was not a violation of the rights of the owner of the soil in the street; for, while it recognizes such rights as to the erection of poles, it does not do so as to the wires;" although he added that he did not intend to express any opinion at that time upon the merits of the case, and that in disposing of the motion, it was enough that it appeared that the complainant's right was not clear. In the latter case, Vice-Chancellor Emery gives his impressions of the construction to be given to the statute of 1896, above quoted, as requiring the consent of the owners of the soil over which the wires are suspended, as well as the owners of the soil on which the poles are located.

The last case cited by the defendant is that of *Paterson Railway Co.* v. *Grundy, 51 N. J. Eq. 213,* in which the question was whether a street railway had the right to stretch feed wires in front of an abutting owner's property without his consent, and in concluding, that if authorized so to do by statute, it was not such an invasion of the defendant's right of adjacency as to entitle him to compensation. Vice-Chancellor Green points out

the distinction between the use of streets by telephone and tele-graph (electric light) companies, and street railways, to be that the latter is, and the former are, not consistent with the character of a highway, and cites *Halsey* v. *Rapid Transit Street Railway Co., 47 N. J. Eq. 380.*

I have analyzed these cases, in order to persuade counsel that the question which was so nonchalantly—perhaps un-thinkingly—handed up, and which to me seems to be one of great importance, both to property owners and public service corporations, remains undecided in this state, and that it should not be finally passed upon until after a careful examination and full discussion by counsel, and, therefore, I decline to express an opinion at this time.

The opinions of the courts of other states are irreconcilable on the proposition as to whether grants, such as conferred by the act of 1896, are consistent with the use of highways, but in this state our highest tribunal has held that such grants to telegraph and telephone lines, *a fortiori* electric lighting lines, are not within the public easement. *Nicoll* v. *New York and New Jersey Tel. Co., 62 N. J. Law 156; affirmed* in *62 N. J. Law 733.* The solution of the problem, then, depends upon whether an exercise of the power given by the act of 1896 invades the constitutional rights of abutting owners, and if it does not, whether the legislature intended that the grant may be enjoyed without the consent of the owner of the soil over which wires only are stretched.

In the briefs of counsel it was argued *pro* and *con* that because the complainant was not in the actual possession of the premises at the time the poles were erected, he was not injured and cannot maintain this action. The bill of complaint sets up, and the answer admits, that he was tenant in possession of the premises at the time he commenced his suit. I do not recall any testimony (a transcript was not furnished) which disputes this allegation; but, however that may be, the poles were unlawfully erected. The trespass was permanent in character and an injury to the reversionary interest (if that was the estate of the complainant), for which an action will lie. *Tinsman* v. *Railroad*

*Company, 25 N. J. Law 255; Todd* v. *Jackson, 26 N. J. Law 525; Carlisle* v. *Cooper, 21 N. J. Eq. 576; Taylor* v. *Public Service Corporation, 75 N. J. Eq. 371.*

If counsel for the complainant desires further argument, I will fix a day. If not, a decree may be entered denying an injunction to remove the poles and wires, but otherwise sustaining the bill, with costs.